CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 4, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RICE ENTERPRISES, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **ADVERSARY NO. 26-03035-SGJ** |
| | § | |
| **BACKGROUNDCHECKS.COM, LLC** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM

### I. Introduction

Before the court is the *Defendant's Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim*[1] (the "***Motion to Dismiss***") pending in the above-

[1] Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim and Brief in Support, DE ## 9,11 (Originally Entered in *Rice Enterprises LLC v. Backgroundchecks.com LLC*, Docket No. 3:24-cv-01652-L (N.D. Tex. Jun. 21, 2024), as DE ## 81, 82 on 10/14/2024). The Defendant's Response Brief ("***Response***") was filed at DE ## 15, 16 on April 29, 2026 (Originally Entered in *Rice Enterprises LLC v. Backgroundchecks.com LLC*, Docket No. 3:24-cv-01652-L (N.D. Tex. Jun. 21, 2024) as DE ## 86, 87 on 11/22/2024). Plaintiff's Reply Brief ("***Reply***") was filed at, DE # 17 on April 29, 2026 (Originally Entered in *Rice*

referenced adversary proceeding (the "***Action***"). The procedural posture of this Action is a bit unusual and deserves explanation at the outset. The Plaintiff Rice Enterprises, LLC (the "***Plaintiff***" or "***Debtor***") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 15, 2023, in the United States Bankruptcy Court for the Western District of Pennsylvania (the "***Home Bankruptcy Court***").[2] Post-petition, the Debtor commenced this Action, in the Home Bankruptcy Court, against the Defendant backgroundchecks.com (the "***Defendant***" or "***BGC***") asserting, among other things, that Plaintiff had requested and paid for a background check on a certain employee of the Debtor's, and the Defendant failed to provide to Plaintiff correct and accurate information (specifically, not reporting a problematic criminal background on the employee).[3] The Defendant soon sought to dismiss the Action for alleged improper venue or, in the alternative, to transfer venue, under 28 U.S.C. § 1412, based on a forum selection clause in the Plaintiff's and Defendant's prepetition agreement (such clause provided that all disputes should be heard in the state or federal courts of Dallas County, Texas). The Home Bankruptcy Court determined that it was appropriate to honor that forum selection clause and granted the motion to transfer venue—transferring this Action to the United States District Court for the Northern District of Texas (the "***District Court***"). The District Court thereafter referred the Action to the above-signing bankruptcy judge, pursuant to 28 U.S.C. § 157(a) ("[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district") and the Northern District of Texas's standing order of reference.[4]

---

*Enterprises LLC v. Backgroundchecks.com LLC*, Docket No. 3:24-cv-01652-L (N.D. Tex. Jun. 21, 2024) as DE # 88).

[2] *In re Rice Enterprises, LLC*, Docket No. 2:23-bk-20556 (Bankr. W.D. Pa. Mar. 15, 2023).

[3] *Rice Enterprises, LLC v. Backgroundchecks.com, LLC*, Docket No. 2:23-ap-02048 (Bankr. W.D. Pa. May 19, 2023).

[4] *See* Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (N.D. Tex. Aug. 3, 1983) ("any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or

The Amended Complaint[5] filed by the Plaintiff brings three causes of action against BGC: (1) breach of contract, (2) fraud, and (3) negligent misrepresentation in connection with the background check that the Plaintiff ordered from BGC. BGC filed the Motion to Dismiss that is now pending before this court on the grounds that Plaintiff has failed to state a claim under which relief can be granted, asserting that the terms and conditions (the "***T&Cs***") accepted by Plaintiff when purchasing the background check limited BGC's liability and disclaimed any warranty related to claims for errors or misrepresentations in the screening report.

As discussed further below, this dispute boils down to one issue: whether the disclaimer of warranties and limitation of liabilities sections of the T&Cs are so inconspicuous and unconscionable as to render them unenforceable. If these sections of the T&Cs are, in fact, enforceable, the Action must be dismissed as there are no plausible grounds on which the Plaintiff can bring its claims. As further detailed below, this court has determined that the disclaimer of warranties and limitation of liabilities sections of the T&Cs are enforceable and, thus, the Plaintiff's counts each fail as a matter of law.

## II. <u>Background Facts</u>

1. Plaintiff is, or was, a franchisee in the restaurant business who, at least at the time of the relevant facts, operated eight McDonald's restaurants in Allegheny County, Pennsylvania.[6] As part of its normal operating procedures, when Plaintiff would give an employee additional responsibilities above those of a standard crew member, the employee would undergo an interview and selection process consisting of a criminal background check and drug screening.[7]

---

related to a case under Title 11 . . . [are to be] referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law.").

[5] Pl.'s Am. Compl., DE #7.

[6] Pl.'s Am. Compl. at 2, DE #7. This court has not been presented with all actions/developments that occurred in the Chapter 11 case in the Home Bankruptcy Court, so the court is not sure of the Plaintiff's current operation-status.

[7] *Id.* at 3.

2. On July 27, 2018, Plaintiff sought to give an employee named Walter Garner ("***Garner***") additional responsibilities.[8] In accordance with Plaintiff's standard procedures, and after receiving consent from Garner, Plaintiff submitted Garner's first and last name, date of birth, and social security number to BGC in order to complete a background check.[9] Plaintiff opted to purchase an online package offered by BGC that included a search of information from all fifty states, including the Pennsylvania Sex Offender Registry and the Pennsylvania Department of Corrections.[10] It is undisputed that the background check at issue cost a mere $3.00.

3. To purchase this service from BGC (again, it was an online service), Plaintiff had to select a box agreeing to BGC's T&Cs, which the parties do not dispute created a legally binding contract between Plaintiff and Defendant.[11]

4. The report received by Plaintiff from Defendant indicated that Garner had never been charged or convicted of a criminal offense in any of the 50 states.[12] Sadly, this was not correct. The report did not reveal the very significant fact that Garner's name was on the Pennsylvania Sex Offender Registry.[13] After the background check was received, Plaintiff permitted Garner to have additional responsibilities above that of a standard crew member.[14]

5. On September 21, 2021, L.H., a minor, by and through her parents and natural guardians, filed a state court action against McDonald's USA, LLC, McDonald's Corporation, and the Plaintiff in the Court of Common Pleas in Allegheny County, Pennsylvania, alleging that L.H. had been sexually harassed and assaulted by Garner.[15]

---

[8] *Id.* at 4.
[9] *Id.* at 5.
[10] *Id.*
[11] Def's Appx in Support of Mot. To Dismiss Pl's Am. Complaint at 68, DE #12.
[12] Pl.'s Am. Compl. Ex. C at 2, DE # 7-3.
[13] *Id.*; Pl.'s Am. Compl. Ex. A at 9, DE # 7-1.
[14] *Id.*
[15] *L.H., a minor, by and through her parents and natural guardians T.H. and B.H. v. Rice Enterprises, LLC, et al.*, Case No. GD No. 21-11435, (Allegheny County, C.P., 2021).

6. On November 10, 2022, E.H., a minor, by and through her parent and natural guardian, filed a suit against McDonald's USA, LLC, McDonald's Corporation, and the Plaintiff in the United States District Court for the Western District of Pennsylvania, alleging that E.H. was sexually harassed by Garner.[16]

7. Once Plaintiff filed bankruptcy, L.H. and E.H., by and through their parents and natural guardians, filed unliquidated proofs of claim in the total amount of $28,000,000.[17]

8. Then, on July 13, 2023, in connection with certain franchise agreements, McDonald's USA, LLC filed a proof of claim in the Plaintiff's bankruptcy case for an alleged claim of indemnification in an estimated amount exceeding $2,085,000, arising from the civil actions filed against McDonald's USA, LLC, McDonald's Corporation, and the Plaintiff as described above.[18]

9. The Plaintiff initially sued BGC in Pennsylvania state court in 2022.[19] BGC filed a motion to dismiss for improper venue, and the state court complaint was dismissed by agreement. Plaintiff then filed this complaint in the Home Bankruptcy Court on March 15, 2023.[20] BGC (as alluded to earlier) then moved to dismiss or transfer the Action on the grounds that the T&Cs require that all litigation will be brought in Dallas County, Texas. The Home Bankruptcy Court transferred the litigation relating to Plaintiff's counts against BGC to the Northern District of Texas, Dallas Division.

[16] *E.H., a minor, by and through her parent and natural guardian, N.V. v. Rice Enterprises, LLC, et al.*, Case No. 2:22-CV-01591-CRE, (W.D. Pa. Nov. 10, 2022).
[17] *In re Rice Enterprises*, *LLC*, Docket No. 2:23-bk-20556, (Bankr. W.D. Pa. Mar 15, 2023), Claim No. 2 filed March, 21, 2023, and Claim No. 6 filed April 14, 2023.
[18] *In re Rice Enterprises, LLC*, Docket No. 2:23-bk-20556, (Bankr. W.D. Pa. Mar 15, 2023), Claim No. 17 filed July 13, 2023.
[19] Pl.'s Am. Compl. Ex. B at 1, DE # 7-2.
[20] *In re Rice Enterprises, LLC*, Docket No. 2:23-bk-20556, (Bankr. W.D. Pa. Mar 15, 2023).

## III. Jurisdiction

10. Bankruptcy subject matter jurisdiction exists in this Action, pursuant to 28 U.S.C. § 1334. No one seems to have disputed that. The Debtor filed the Action in the Home Bankruptcy Court soon after commencing its Chapter 11 case, and the outcome of the Action could conceivably affect the bankruptcy estate being administered. The Action was intertwined with multiple proofs of claim being pursued against the estate (*i.e.,* those of the two minors and those of McDonald's USA, LLC). While it appears to this court that the Action may be "non-core" in nature (as state law claims are presented), no party has expressed opposition to this court issuing final orders or judgments in this Action. Thus, this bankruptcy court has statutory and constitutional authority to issue a final order or judgment in this Action.

## IV. Legal Standard

11. "To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21] To meet this standard, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully."[22] The Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff, however, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[23] A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24]

12. In ruling on a Rule 12(b)(6) motion, a court may consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on

---

[21] *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 587 (N.D. Tex. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[22] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[23] *Id.* (quoting *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007)).
[24] *Id.* (quoting *Twombly*, 550 U.S. at 555).

'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[25] Second, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"[26] Third, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."[27]

13. The Plaintiff's Amended Complaint asserts that a contractual relationship was formed between it and BGC when Plaintiff purchased the background check and accepted the T&Cs. Plaintiff asserts three causes of action, all of which relate to the T&Cs. First, that BGC breached the T&Cs by failing to report that Garner had previous sex offense convictions. Second, that BGC engaged in fraud by representing to Plaintiff that BGC searched the Pennsylvania Sex Offender Registry and Garner was not on it. Third, that BGC committed negligent misrepresentation by representing that it had searched the Pennsylvania Sex Offender Registry, among other sources, and that Garner did not appear on any sources as having a prior conviction, when he, in fact, is on the Pennsylvania Sex Offender Registry.[28]

14. Counts two and three of Plaintiff's complaint must fail as a matter of law due to the economic loss rule. The economic loss rule, as acknowledged and applied by Texas courts, generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.[29] Counts two and three of Plaintiff's Amended Complaint are for fraud and negligent

---

[25] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).
[26] *Sullivan v. Leor Energy*, *LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).
[27] *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g., Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").
[28] Pl.'s Am. Compl. Ex. A at 9, DE # 7-1.
[29] *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

misrepresentation respectively, both tort claims. These claims assert no duties, injuries, or facts that would give rise to causes of action independent of the underlying contract and the alleged breach thereof. Moreover, the alleged harm arising from the alleged fraud and/or negligent misrepresentation is the economic loss suffered by Plaintiff due to Defendant's alleged failure to perform under the contract and the related alleged breach. Accordingly, counts two and three fail as a matter of law.

15. This court will now look to whether there are enough facts to state a plausible claim relating to Plaintiff's count one alleging breach of contract.

16. BGC argues that the relief requested by Plaintiff is barred by the T&Cs which include provisions that disclaim all warranties including any warranty that the work is accurate or free of error.

17. Under Texas law a disclaimer of warranty can bar negligent misrepresentation and fraud.[30] The court determined already, above, that these tort counts fail by virtue of the economic loss rule. But does the breach of contract count survive the Motion to Dismiss or is it, too, barred by the terms of the contract? The court will examine Section 6.2 (the "***Disclaimer of Warranties Section***") and Section 6.5 (the "***Limitation of Liabilities Section,***" together with the Disclaimer of Warranty Section, the "***Sections***") of the T&Cs and will thereafter contemplate the conspicuousness, conscionability, and overall enforceability of the same.

## V. Relevant Provisions of the Terms and Conditions

18. In the Motion to Dismiss, Defendant cites two main sections of the T&Cs to support its contention that Plaintiff failed to state a claim on which relief can be granted. Defendant argues that these sections of the T&Cs (1) disclaim all warranties, including any warranty of accuracy or

---

[30] *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009) (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995) (fraud)); *Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843–44 (Tex. App. — Houston [1st Dist.] 2004, no pet.) (negligent misrepresentation).

any warranty that BGC's performance is free of error, and (2) limit liability owed by BGC.

19. Defendant cites first to the Disclaimer of Warranties Section of the T&Cs, entitled "Do we make any warranties?", in which the Defendant "make[s] no warranties" and "disclaim[s] all warranties (a) of merchantability, fitness for a particular purpose, workmanlike performance, and accuracy… or (c) that [Defendant's] performance or anything that [Defendant] provides is free of errors."[31] Defendant argues that this provision leaves Plaintiff with no plausible cause of action for any breach of contract claim relating to the accuracy of Defendant's final report because, quite simply, it is barred by the language and terms of the Disclaimer of Warranties Section.

20. Defendant next cites the Limitation of Liabilities Section of the T&Cs, entitled "How does this agreement limit our liability?", and provides that BGC will not liable for "(a) third-party claims against [Plaintiff] or anyone associated with [Plaintiff]; (b) consequential damages… incidental damages…punitive damages, or indirect damages...; or (c) damages in the aggregate that exceed the total fees [Plaintiff] paid [Defendant] under the agreement during the calendar month for which those fees were the highest (or $100, if that is higher)…"[32] Defendant argues that this clause, specifically Section 6.5(a), eliminates liability for precisely the types of claims Plaintiff has brought here, namely a claim against Defendant resulting from the third-party claims brought by L.H. and E.H. against Plaintiff.

## VI. <u>Conspicuousness of the Provisions</u>

21. Texas courts have held that for a disclaimer of a warranty or limitation of liability to be enforceable, it must be conspicuous and in writing.[33]

22. A provision in a contract is conspicuous when it is "so written, displayed, or

[31] Def's Appx in Support of Mot. To Dismiss Pl's Am. Complaint at 31–32, DE #12.
[32] *Id.* at 33.
[33] TEX. BUS. & COMM. CODE § 2.316 (West 2026); *Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 279 (Tex. App.—Tyler 2002, no pet.); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505–511 (Tex. 1993).

presented that a reasonable person against which it is to operate ought to have noticed it."[34] Conspicuous terms include "(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language."[35] The Fifth Circuit has further held that a clause in boldface and all capital letters "complie[d] with Texas's requirement that damages waivers be conspicuous"[36]

23. Plaintiff argues that neither the Disclaimer of Warranty Section nor the Limitation of Liability Section of the T&Cs are sufficient to bar recovery because they are not conspicuous and, therefore, are not enforceable.

24. In oral argument with the court, Plaintiff argued that the terms and conditions in the record were a printed pdf version, and that the appearance of this version differed from the online version seen when a consumer clicks the link to the T&Cs online. Plaintiff argued that the online version appeared less conspicuous. However, the only version of the T&Cs seen by this court was the pdf version, which was also the only one entered into the record. Therefore, the court can only determine conspicuousness based off of the version of the T&Cs that is in the record.

*a. <u>Disclaimer of Warranty Section</u>*

25. As to the Disclaimer of Warranty Section, the court determines that Plaintiff cannot plausibly argue that this section is not conspicuous.

26. The Disclaimer of Warranty Section reads as follows:

---

[34] TEX. BUS. & COMM. CODE § 1.201(10) (West 2026).
[35] *Id.*
[36] *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 179 (5th Cir. 2016).

> "Section 6.2 Do we make any warranties?
>
> ***We make no warranties. Without limiting the foregoing general disclaimer, we disclaim all warranties (a) of merchantability, fitness for a particular purpose, workmanlike performance, and accuracy; (b) that arise from course of dealing, course of performance, or usage of trade; or (c) that our performance or anything that we provide is free of errors or operates without interruption. You confirm that you are not entering this agreement on the basis of any warranty outside of this agreement. You acknowledge that these disclaimers are an integral part of an agreement in which you and we have actively and intentionally allocated risk and that we would not provide you the services if you did not accept these disclaimers. These disclaimers apply even if any remedy fails of its essential purpose due to these disclaimers.***"[37]

27. The court has determined that the Disclaimer of Warranty Section is conspicuous for a number of reasons. First, the heading of section 6.2 is a font size larger than the surrounding body text of section 6.1 which precedes it and is a size larger than the body text of section 6.2 which follows. Second, the heading is set off from the body text of the paragraph preceding it with the section notation "Section 6.2" which aids in ease of differentiating between the different sections in the contract. Third, the body of the Disclaimer of Warranty Section is in bold, italic font, which differs from other body paragraphs and differs from the headings of sections 6.2 and 6.3 which surround it. While the body of the sections immediately preceding and following the Disclaimer of Warranty Section have the same size font, neither of those sections are bold or italicized. The bold, italic font used in the Disclaimer of Warranty Section sets it apart from the surrounding paragraphs and draws the eye to it.

28. Plaintiff argues that "an issue of fact is raised as to whether a reasonable person would have noticed [the disclaimer of warranty] clause."[38] The court disagrees. The court believes that a reasonable person would have noticed the Disclaimer of Warranty Section of the T&C because, as established, it was offset by a specific heading in larger font, and the body text

[37] Appx in Support of Mot. To Dismiss Pl's Am. Complaint at 31–32, DE #12.
[38] Br. in Support of Pl's. Resp. to Def's. Mot. To Dismiss the Am. Compl. Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim at 6, DE # 16.

was in a bold italic font that differentiated the section from the sections that preceded and followed it. Furthermore, the court notes that the Plaintiff had seen this contract before, as it had repeatedly ordered similar background checks from BGC in the past.[39] Plaintiff acknowledges that all of these past orders required an affirmative acknowledgement that it had read the terms and conditions provided by BGC.[40]

*b. Limitation of Liability*

29. As to the Limitation of Liability Section, the court has determined that this section is also conspicuous.

30. The Limitation of Liability Section reads as follows

> "Section 6.5 How does this agreement limit our liability?
>
> ***Even if any exclusive remedy fails of its essential purpose, we are not liable for:***
>
> a. ***third-party claims against you or anyone associated with you;***
>
> b. ***consequential damages (including lost opportunity, profits, use, or savings), incidental damages (even if advised of their possibility), punitive damages, or indirect damages;***
>
> c. ***damages in aggregate that exceed the total fees you paid us under this agreement during the calendar month for which those fees were the highest (or $100, if that is higher); or***
>
> d. ***damages arising from our delay in performing or failure to perform, to the extent beyond our reasonable control and ability to mitigate (including delay or failure caused by natural disasters, acts of god, disease, embargoes, organized labor disputes, riots, terrorism, war, or acts of civil and military authorities).***"[41]

31. The court has determined that the Limitation of Liability Section is conspicuous because, as was the case with the Disclaimer of Warranty Section, the

[39] Pl's. Am. Compl. at 3–4, DE #7.
[40] Pl's. Am. Compl. at 3–4, DE #7.
[41] Def's Appx in Support of Mot. To Dismiss Pl's Am. Complaint at 33, DE #12.

Limitation of Liability Section is offset by a heading that is a larger font than the body text around it. Moreover, the body text of the Limitation of Liability Section itself is offset by being in bold, italic font, unlike the body text of the surrounding sections 6.4 and 6.6 which are in plain font.

32. In a similar case, the Fifth Circuit Court of Appeals held that a disclaimer featured in the terms and conditions accompanying a purchase order was conspicuous because it "was written in all capital letters and bold type."[42] The court there further noted that the parties "had a long-standing professional relationship" and that the "disclaimer not only accompanied the purchase order for the … product, but had also been included with [plaintiff's] prior purchases of [defendant's] products."[43] Based on these factors, the Fifth Circuit saw "no reason why the Terms and Conditions should not be given effect."[44] As established above, not only were the headings set apart with a larger font size, the Sections were offset with bold, italic text, and the Plaintiff had done business with BGC before and had seen and agreed to the T&Cs and the Sections at issue.[45]

33. For the reasons stated above, the court has determined that the Disclaimer of Warranty Section and the Limitation of Liability Section are sufficiently conspicuous and are not unenforceable due to a lack thereof.

## VII. <u>Conscionability of Provisions</u>

34. Plaintiff further argues that the Sections are procedurally and substantively unconscionable.

35. "Unconscionable contracts are unenforceable under Texas law."[46] Generally, unconscionability is a question of law that looks to "the circumstances of the bargain" including

[42] *Thermacor*, 567 F.3d at 743.
[43] *Id.*
[44] *Id.*
[45] Def's Appx in Support of Mot. To Dismiss Pl's Am. Complaint at 67–68, DE #12.
[46] *Emily's Place, Inc. v. Regions Bank*, 764 F. Supp. 3d 485, 493 (N.D. Tex. 2025).

"the commercial atmosphere in which the agreement was made, the alternatives available to the parties at the time and their ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature."[47]

36. Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the provision, and (2) substantive unconscionability, which refers to the fairness of the provision itself.[48] Critically, the principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position, rather, unconscionability principles are applied to prevent unfair surprise or oppression.[49]

37. "In determining whether a contract is unconscionable, courts consider (1) the 'entire atmosphere' in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the 'non-bargaining ability' of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable."[50] Accordingly, the court will consider these factors in turn.

38. When looking at the "entire atmosphere" here, the court notes that it is undisputed that the parties had previously entered into the same contract with the same T&Cs, meaning the Plaintiff was aware, or at least had reasonable opportunity to be aware, of the Sections at issue here and the way they might limit BGC's liability. Moreover, the court notes that there is no allegation that there was any coercion in the formation or signing of this contract, nor anything to indicate that there was any intention on the part of BGC to unfairly surprise or oppress the Plaintiff.

---

[47] *Tobey v. Ace Parking Mgmt.*, No. 3:24-CV-2932-X, 2025 LEXIS 279035, at *9 (N.D. Tex. 2025) (citing *Venture Cotton Co-op. v. Freeman,* 435 S.W.3d 222, 228 (Tex. 2014)).
[48] *See Ashby v. Whataburger LLC*, No. 1:25-CV-00798-ADA-DH, 2025 LEXIS 459914 at *9 (W.D. Tex. 2025), (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004)).
[49] *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006).
[50] *Ashby*, 2025 LEXIS 459914 at *9 (citing *Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1064 (W.D. Tex. 2020)).

39. As to the availability of alternatives, Defendant is not the only company that provides background checks. After examining the T&Cs and seeing the Disclaimer of Warranty Section and the Limitation of Liability Section, the Plaintiff could have chosen to purchase a background check from another company. Plaintiff was not bound to Defendant and did not have to agree to the T&Cs that Defendant listed if it did not find the contents of the T&Cs satisfactory.

40. In considering the bargaining abilities of the parties, the court notes that the Plaintiff is not a layperson who would not be expected to have any business prowess. The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous negotiating position. Plaintiff is or was the franchise owner of eight McDonalds restaurant locations and had purchased background checks from BGC before. This was not a situation in which a large corporation might have taken advantage of an unsophisticated consumer. Instead, this is a situation in which two businesses chose to enter into a contract together. In *Rivera v. Ross Dress for Less, Inc.*, the court found that an arbitration provision in a contract was not procedurally unconscionable even though the employee who signed the contract could only speak and read Spanish because the employee did not request assistance in reading and understanding the contract.[51]

41. The Plaintiff's alleged facts here certainly display less disparity between the contracting parties as compared with the situation at issue in *Rivera*. As stated, the Plaintiff is not a consumer or layperson; it is a business that (according to its bankruptcy statement of financial affairs, of which this court takes judicial notice) earned millions in revenue each year and owned several franchise locations of a very successful international company. Plaintiff was undoubtedly sophisticated enough to understand the contract and the Sections that it agreed to, and even if the

[51] *Rivera v. Ross Dress for Less, Inc.*, No. 4:22-CV-74, 2023 U.S. Dist. LEXIS 171266 at *12 (2023).

Plaintiff's principal might have been unsophisticated, Plaintiff still had a duty to request assistance in understanding the contract. Therefore, the court has determined that the Plaintiff was not in a position of having such reduced bargaining power or understanding such that the contract and the Sections could be rendered unconscionable.

42. The court next has determined that the contract, specifically the Sections, were not illegal or against public policy. Plaintiff argues that the contract at issue is a contract of adhesion which, if true, would render the contract unconscionable.[52] An adhesion contract "is a standardized contract form for consumer goods and services that are offered on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing."[53] However, a "contract of adhesion, . . . [is] not *per se* unconscionable or void" in Texas.[54] The Texas Supreme Court has noted that "the principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position."[55] This contract and T&Cs simply did not rise to the level of illegality or being against public policy.

43. While the court acknowledges that Plaintiff could not likely have negotiated or modified any terms in the T&Cs that were agreed upon and could not have contracted out of the Limitation of Liability Section and the Disclaimer of Warranty Section, the Plaintiff still could have chosen to use another background check company that perhaps had different terms.[56]

---

[52] Br. in Support of Pl's. Resp. to Def's. Mot. To Dismiss the Am. Compl. Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim at 14, DE # 16.
[53] *Heaven v. Chase Home Fin. LLC*, No. 3:08-CV-1872-L, 2009 WL 3163546, at *4 (N.D. Tex. Sept. 30, 2009).
[54] *In re Palm Harbor*, 195 S.W.3d at 678 (emphasis in the original).
[55] *Id.* at 679.
[56] *See id.* at 678 (stating that just because the plaintiffs "would not have been able to buy the manufactured home unless they signed the arbitration agreement does not, in and of itself, make the agreement substantively unconscionable").

44. Finally, when considering if the contract was oppressive or unreasonable, the court has determined that, given the reasons stated, there was no unfair surprise that would render the contract or the Sections unreasonable or oppressive to the Plaintiff. As established above, the Sections were conspicuous, so there could be no unfair surprise. Regardless of the conspicuousness of the provisions, for the purposes of unconscionability, courts have held that a party who has had the opportunity to read the provisions of a contract and signs that contract is charged with knowing its contents.[57] Here, Plaintiff in its own brief explained to the court how the T&Cs were accessed and acknowledged that the T&Cs had to be opened and affirmatively agreed to before the background check could be purchased. Accordingly, the court has determined that the Plaintiff is charged with knowing the contents of the T&Cs and, accordingly, could not have suffered from unfair surprise.

45. Even if the Plaintiff did not read the T&Cs, despite having to affirmatively agree that it did, courts have held that absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract they signed, regardless of whether they read it or thought it had different terms.[58] Because there is no fraud, misrepresentation, or deceit here as to the Sections, Plaintiff is bound by the Sections regardless of whether it actually read them.

46. Quite simply, it is not disputed that there were other options through which the Plaintiff could have acquired a background check. Therefore, there was also no unfair oppression in agreeing to these terms. The terms themselves were not mandatory as the Plaintiff could have chosen to use another provider. Even if BGC had been the only provider, the court still cannot fathom how the Sections could be deemed unfairly oppressive to the Plaintiff. ***The background check at issue cost a mere $3.00***. Given the nominal cost of the background check, it is not

[57] *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996).
[58] *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn*, 934 S.W.2d at 90).

surprising that BGC would include the Disclaimer of Warranty Section and Limitation of Liability Section in the T&Cs, as it would otherwise be opening itself to high levels of liability despite offering a product that does not bring in material revenue. Given the nominal cost of the background check requested, the court has determined that the Sections are not so unfairly one-sided as to be oppressive and unconscionable.

## VIII. <u>Enforceability of Provisions</u>

47. The court cannot see a plausible argument here that the Sections are unenforceable. Texas courts have "long recognized the strongly embedded public policy favoring freedom of contract."[59] The Supreme Court of Texas has held that "absent a compelling reason, courts must respect and enforce the terms of a contract that the parties have freely and voluntarily made."[60] Texas courts have further held that "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy,"[61] and "parties can contractually waive certain substantive and procedural rights."[62]

48. The Supreme Court of Texas has held that "limitation-of-liability clauses, however, are generally valid and enforceable."[63] It has further stated that it has "never held that fraud vitiates a limitation-of-liability clause," and that courts "must respect and enforce the terms of a contract that parties have freely and voluntarily entered."[64] In *Bombardier,* the Supreme Court of Texas stated that "[u]nder our strongly held principles of freedom to contract, we hold that the limitation-of-liability clauses are valid limited warranties that were the basis of the parties' bargain."[65]

---

[59] *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W. 3d. 213, 230 (Tex. 2019) (citing *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482 (Tex. 2017); *Phila. Indem. Ins. v. White*, 490 S.W.3d 468, 471 (Tex. 2016); *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008); *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951)).
[60] *Id*.
[61] *In re Prudential Ins. Co. of Am*., 148 S.W.3d 124, 129 (Tex. 2004).
[62] *Bombardier*, 572 S.W.3d. at 230 (quoting *Shields,* 526, S.W.3d at 483).
[63] *Id.* at 231 (citing *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex. 1991)).
[64] *Id.* at 232.
[65] *Id.* at 233 (citing *Sw. Bell Tel. Co.*, 811 S.W.2d at 577).

49. As to the Disclaimer of Warranty Section, Texas law permits parties to an agreement to disclaim implied warranties.[66] The Texas Business and Commerce Code specifically states that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in the case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be [in] writing and conspicuous."[67] As established, the Disclaimer of Warranty Section was in writing, was conspicuous, and was conscionable. Therefore, it is enforceable under Texas law.

50. Furthermore, Texas courts have a long history of respecting the contracts parties enter into and the provisions to which they have agreed. As established, the provisions at issue here do not violate the law or public policy. For these reasons, the court must conclude that the Limitation of Liability Section and the Disclaimer of Warranty Section are both enforceable.

## IX. <u>Conclusion.</u>

The result here in many ways does not feel satisfying. To quote a famous movie, BGC "had one job."[68] To produce the results of a background check on Garner. The report that BGC produced omitted something very significant. As a counter argument to this, one might suggest "you get what you pay for" (the background check at issue cost a mere $3.00). In any event, while BGC's failure to provide an accurate report apparently resulted in a sex offender (Garner) being promoted by the Plaintiff, when he, presumably, otherwise would not have been, and the promotion, in turn, put him in proximity to two young girls who were horribly victimized, the court must determine, as a matter of law, that the Plaintiff and Defendant are bound to the bargain to which they agreed—the bargain incorporated a disclaimer of warranties and limitation of liability. For the reasons set forth above, the court concludes that the Limitation of Liability Section and the

[66] TEX. BUS. & COM. CODE § 2.316 (West 2026).
[67] *Id.*
[68] *OCEAN'S ELEVEN* (Warner Bros. Pictures 2001).

Disclaimer of Warranty Section were conspicuous and that these provisions were not procedurally or substantively unconscionable. Because the provisions were conspicuous and not unconscionable, the Plaintiff has no grounds on which it can properly bring its claims. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss is **GRANTED**;

**IT IS FURTHER ORDERED** that this Action shall be dismissed with prejudice.

Plaintiff is instructed to submit a Judgment that is consistent with this Memorandum Opinion and Order.

**### END OF MEMORANDUM OPINION AND ORDER ###**